LAUNSTEIN v. LAUNSTEIN.

1. WATERS AND WATERCOURSES—SURFACE WATERS—RIGHTS OF DOMINANT ESTATE.

A landowner has the right to have the surface water which flows from his land follow its natural course, without interruption by an adjoining proprietor across whose land the natural drainage lies; the adjoining proprietor's being to that extent the servient estate.

2. SAME—PRESCRIPTIVE RIGHT.

An easement may be acquired by prescription by which the water collected upon the lands of the upper proprietor may be allowed to overflow the lands of an adjacent proprietor.

3. SAME—SAG HOLES—RIGHT TO FILL.

The owner of the dominant estate may, in the interests of good husbandry, and in the good-faith improvement and tillage of his farm, fill up sag holes, so that no water will accumulate or stay in them, even if the water arising from rainfall or melting snows by reason thereof finds its way upon the servient estate and the flow thereon is incidentally increased.

4. SAME—ARTIFICIAL DRAINS—RIGHT TO USE.

The owner of the dominant estate cannot, by artificial drains or ditches, collect the waters of stagnant pools, sag holes, basins, or ponds upon his premises, and cast them in a body upon the proprietor below, to his injury.

5. SAME—HIGHWAYS—CULVERTS—ENLARGEMENT—INJURY TO SERVIENT ESTATE.

The enlargement of a culvert under the highway is no injury to a landowner the situation of whose land is such that in a time of high water that which does not flow through the culvert will force its way over the highway onto his land.

Appeal from Shiawassee; Smith, J. Submitted October 25, 1907. (Docket No. 140.) Decided December 30, 1907.

Bill by Henry Launstein against Oliver Launstein and David Winkler to enjoin the maintenance of a sluice in a

highway, and to require the filling of certain drains. From a decree dismissing the bill, complainant appeals. Modified and affirmed.

*Watson & Chapman*, for complainant.

*Walsh & Pardee* (*John T. McCurdy*, of counsel), for defendants.

MONTGOMERY, J. This bill is filed to enjoin the defendants from maintaining a sluiceway in the highway adjacent to complainant's premises, and for a mandatory injunction requiring the defendant Oliver Launstein to fill up the drains upon his farm which carry water from off said Oliver Launstein's farm down through said sluiceway in question and upon the land of complainant.

Complainant and defendant Launstein own each 80 acres of land, the complainant on the west, and the defendant on the east side of a north and south highway in the township of Owosso. At a point some 20 rods south of the northerly line of the two proprietors there is an open ditch extending westerly across lands of complainant, emptying into a public drain known as Wilkinson's drain, which in turn empties into Maple river.

The bill alleges that for the past 8 years the defendant Launstein has been draining his farm and turning the waters down to and upon the highway in question and has caused a larger amount of water to flow from his farm down upon the highway than would naturally flow there and drain from his land. That in May, 1904, the defendants came to the highway and dug a drain across said highway and placed in the drain across the roadbed a large wooden culvert which was intended to and did carry the water from the highway and from said Oliver Launstein's farm over and upon the improved land of complainant. That said sluice and drain was about 40 rods south of where the large open drain above referred to was located.

The answer admits that the defendants constructed the

culvert in question, but avers that this was built to replace a culvert which had been in place upon this highway for many years. Defendants further alleged that they were acting under the authority of the highway commissioner in repairing said culvert, and aver that it was placed there in good faith and was done for the sole purpose of improving the condition of the highway. Defendant Launstein avers that the natural drainage from his land of the surface water is to the northwest, and that the water naturally flows across said highway at about the point where this culvert in question is located and across the lands of the complainant to the northwest until it reaches the Wilkinson drain, so-called. He denies that he is draining his land and the sag holes on his farm other than they have been drained for the past 20 years and upwards, and denies that the drainage is any other than is practiced in good husbandry. That complainant has somewhat impeded the flow of water in its natural course by an embankment on the easterly side of his land. Defendant also shows that there has been for many years a drain or ditch running westerly from the culvert in question on complainant's land which serves a double purpose of draining complainant's land and carrying away the water which in its natural course reached this point from defendant's land, and the defendant asks relief, and that complainant be required to remove the embankment and be peremptorily enjoined from refilling the ditch and be required to maintain the ditch for the purpose of drainage aforesaid.

The legal questions involved in the case are not difficult. The case of *Gregory* v. *Bush*, 64 Mich. 37, which has been frequently cited and followed by this court, furnishes the rule of law for the case. The defendant undoubtedly has the right to have the surface water which flows from his farm follow its natural course, and if that takes it across the lands of complainant then complainant has no right to interrupt this flow of water in this natural course or direction. To that extent the complainant's is the servient estate.

It was held in *Gregory* v. *Bush*, supra, following *Boyd* v. *Conklin*, 54 Mich. 583, that an easement may be acquired by prescription by which the water collected upon the lands of the upper proprietor may be allowed to overflow the lands of an adjacent proprietor; and that the owner of the dominant estate may in the interest of good husbandry, and in the good-faith improvement and tillage of his farm, fill up the sag holes, so that no water will accumulate or stay in them, even if the water arising from rainfall or melting snows should thereby, in natural processes, find its way upon the servient estate and incidentally increase the flow thereon. It was also held that the owner of the dominant estate cannot by artificial drains or ditches collect the waters of stagnant pools, sag holes, basins or ponds upon his premises, and cast them in a body upon the proprietor below, to his injury.

These rules of law furnish a sufficient guidance for the determination of this case, and the question gets down to one of fact. The case has on this branch given us no little trouble, and it has required a most careful examination of the testimony, and the conclusions which we have reached are as follows: *First.* That the surface water which flows from the land now owned by Oliver Launstein has always found its outlet at about the point where the culvert is constructed over and thence across the highway into the lands of complainant and over his land in the direction of the present location of the Wilkinson drain. *Second.* That for many years the flow of water has been accelerated and increased by a shallow ditch dug at the bottom of a natural ravine extending across the lands of defendant Launstein and by other ditches leading into the same and of less importance. That this flow of water has been conveyed in this manner across and off these premises for more than the statutory period is undoubted.

The only question that could arise is whether by increasing the size of this ditch the flow has been increased beyond that fixed by the prescriptive right. The evi-

dence shows that the ditch first consisted of two ploughed furrows and perhaps a third in the center, its construction resulting in throwing up loose dirt on either side of the ditch. It also shows that in late years defendant Launstein has scraped this loose dirt farther back from the bottom of the ditch for the purpose of enabling him to drive mowing machines and other farm implements across the ditch. We are not convinced that this has increased the capacity of the ditch for carrying water. The ditch has not been lowered and if spread out over more land it would seem that more water would percolate into the soil than if it were kept in a narrow space. Moreover, the testimony fairly indicates that the bottom of the ditch is not now at as low a grade as when first constructed.

The question which has given us more doubt is whether the drainage from the sag hole has been increased. But upon this question we think the weight of the testimony is with the defendant, that from the time the land was improved the custom has been to turn an ordinary furrow from these sag holes in the ground and from time to time to fill in the sag holes by scraping dirt into them freely. Except in filling in the sag holes which the defendant had, under the cases cited, a perfect right to do, there has been no increased facility of flowage from the sag holes or ditch to the ravine in question. We are satisfied therefore that upon the facts the complainant has failed to make a case.

The evidence indicates that the complainant's relief is open to himself; that by re-opening and keeping open this ditch in question, or if not by this means, by carrying a ditch on the westerly side of the highway north to the open ditch referred to, he can take care of the water which in right comes from defendant's land to his own.

As to the culvert, the evidence is that this culvert is substantially the size—possibly a little larger—than the one which it was built to replace. But the fact of its being larger does not injuriously affect the complainant for the

reason that in high water if the water coming from defendant's premises does not find its way through this culvert it will force its way across the highway and upon the lands of complainant. See *Chapel* v. *Smith*, 80 Mich. 111.

So far as the relief prayed for by defendant against complainant is concerned, we think that the embankment which does not cross the open ditch extending easterly from the sluice in question cannot be said to work injury to defendant by damming up the water. It is lower than the highway opposite. If any injury results to defendant it must be from the stoppage of this drain. We think complainant should be required by the decree to keep the drain in question open to its original depth. The damages proven by defendant are insignificant—too slight indeed to be considered.

The decree will be for the defendant in form indicated in this opinion, and defendant will recover costs of both courts.

GRANT, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.